**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GEORGE HERNANDEZ, | No. 12-55023 |
| Plaintiff - Appellant, | D.C. No. 2:10-cv-03703-JAK-FFM |
| v. | |
| TYLER KENNEDY; FRANK WILLIS; CITY OF WEST COVINA, | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Argued and Submitted October 9, 2013
Pasadena, California

Before: REINHARDT, KLEINFELD, and CHRISTEN, Circuit Judges.


In his brief, Hernandez argued claims under Brady v. Maryland, 373 U.S. 83

(1963), search and seizure, intentional infliction of emotional distress, and

substantive due process, but as Hernandez conceded at oral argument, he was

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

limited by precedent to his substantive due process argument. Though the police officer, Tyler Kennedy, omitted material information suggesting weaknesses in the case against Hernandez and the policeman's improper motivation (his affair with the alleged victim) when he argued for increased bail to keep Hernandez in jail, all charges against Hernandez were dropped by the district attorney. There was, as Hernandez concedes, probable cause for his arrest, his undisputed violation of a restraining order. It does not vitiate the probable cause that his on and off girlfriend encouraged the violation.

The substantive due process argument is that the policeman relentlessly pursued him and threw him in jail, despite knowing that he was probably innocent, because the policeman wanted to have sex with Hernandez's former girlfriend and the mother of his three children. The policeman did indeed begin an affair with Hernandez's former girlfriend early in the investigation, and had indeed written The Magic Triangle, a book on how to get women to consent to sex by agreeing with whatever they say and telling whatever lies were necessary. And the policeman had reason to suspect that the former girlfriend might be lying about Hernandez forcibly raping her, because she had filed two false claims against Hernandez before, she had repeatedly invited Hernandez to walk across the street

2

and have sex with her, and Hernandez showed the policeman a videotape of the two of them having consensual sexual intercourse on an earlier occasion. The former girlfriend had left a message on Hernandez's cell phone voice mail the very day she alleged that he had raped her suggesting that she was miffed that he had not responded to her request for sex.

The defect in Hernandez's "shock the conscience," Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998); United States v. Salerno, 481 U.S. 739, 746 (1987), substantive due process claim is that Hernandez's evidence did not establish that Officer Kennedy knew or should have known that he was innocent. Though the policeman's actions may have been motivated by a David-and-Bathsheba intention to get Hernandez out of the way of the policeman's sexual relationship, the best Hernandez's evidence established was that Kennedy should have known that Hernandez had a strong probability of establishing a reasonable doubt. Hernandez could have raped his former girlfriend on the occasion in question despite their consensual sex on an earlier occasion, and despite her rejected invitation to have sex that day. Kennedy did not (and did not have to, in order to get him out of the way) fabricate evidence to frame a person whom he knew or should have known to be innocent. His motivation did not wash away the

3

evidence of the violation of the restraining order. See Whren v. United States, 517 U.S. 806, 811 (1996); Al-Kidd v. Ashcroft, 580 F.3d 949, 966 (9th Cir. 2009), rev'd on other grounds, __ U.S. __, 131 S. Ct. 2074 (2011).

Tatum v. Moody, 768 F.3d 806 (9th Cir. 2014), cannot be extended to this case. Tatum v. Moody states its rule as follows: "We emphasize the narrowness of the constitutional rule we enforce today, which is restricted to detentions of (1) unusual length, (2) caused by the investigating officers' failure to disclose highly significant exculpatory evidence to prosecutors, and (3) due to conduct that is culpable in that the officers understood the risks to the plaintiff's rights from withholding the information or were completely indifferent to those risks." Id. at 819–20. In Tatum, the innocent man was jailed for 27 months, here for one night. See id. at 813. And in Tatum, the evidence not disclosed to the prosecutor was much more clearly exculpatory. Had Kennedy disclosed to the prosecutor his sexual relationship with Hernandez's girlfriend and the mother of his children, the prosecutor might have declined the case because of the potential embarrassment to the police department or his office, but that embarrassment is not the same thing as innocence of Hernandez on the charge of violating the restraining order. The girlfriend's entreaties to Hernandez to violate the restraining order do not prove his

4

innocence of violating it, as opposed to proving her own poor character, as would the evidence that she had lied before to get Hernandez in trouble. By contrast, the two police officers in Tatum lied. Id. at 809. There, there was overwhelming evidence of actual innocence, and here there is not. The police in Tatum put a man in jail for robberies of stores with notes demanding money, a common enough technique for bank robberies but an unusual modus operandi for retail store robberies. The police represented that since the arrest, "the crime spree caused by the 'Demand Note Robber' has ceased." Id. That was a false statement. The crime spree continued while the arrestee was in jail, even with the same misspelling repeated in one of the demand notes. Id. at 813.

Officer Kennedy's motivation might arguably have been worse than what motivated the police officer's dishonesty in Tatum, but the one night detention did not compare with the more than two years in Tatum, and the evidence Officer Kennedy chose not to disclose, though it demonstrated the impeachability of both himself and the purported victim, did not show that Hernandez was innocent.

As for the claim that the City of West Covina should have fired Kennedy or at least removed him as a sex crimes specialist because of his book, The Magic

Triangle, on how to get sex by any means necessary, the book did not say Kennedy was a police officer or suggest abuse of police power. Though the police chief had looked at the book when it was brought to his attention by Commander Marc Taylor, he established by thumbing through the book that it was Kennedy's off duty personal writing project, and said nothing to establish that Kennedy was a police officer or would abuse his police authority. What the police chief had before him amounted to an offensive book written by an officer off duty, that did not cast a bad light on the police department or imply that the author would abuse his police authority. Hernandez offered no evidence establishing municipal "policies or customs," Henry v. Cnty. of Shasta, 132 F.3d 512, 517 (9th Cir. 1997), that would allow policemen to throw people in jail on weak charges in order to have sex with their girlfriends.

This case is troubling, but we are unable to conclude that Hernandez established a genuine issue of material fact for a substantive due process claim. See Bingue v. Prunchak, 512 F.3d 1169 (9th Cir. 2008) (affirming judgment on the pleadings for police officer who struck vehicle during high speed chase of another vehicle); Devereaux v. Abbey, 263 F.3d 1070 (9th Cir. 2001) (affirming summary

judgment for investigators where improper interview techniques elicited false statements about father sexual abusing children).

**AFFIRMED.**